IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAROOR, LLC, an Illinois limited liability company, | ) ) ) |
| Plaintiff, | ) ) ) |
| DHARMENDRA R. PATEL, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES Plaintiff, Saroor, LLC, an Illinois limited liability company, by and through its attorney, Jack L. Haan of the Law Office of Jack L. Haan, P.C., and for its Complaint against Defendant, Dharmendra R. Patel, states as follows:

*Parties.*

1. Saroor, LLC ("Saroor"), is an Illinois limited liability company with its principal place of business in Alsip, Indiana.

2. Defendant, Dharmendra R. Patel ("Patel") is an individual residing at 130 Savina Drive, Brunswick, Georgia.

*Venue and Jurisdiction.*

3. Venue is proper in the federal court for the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different States as Saroor is a limited liability company incorporated in Illinois with its principal place of business in Alsip, Illinois and Patel is a resident and citizen of

1

the State of Georgia. In addition, Saroor's claim seeks compensatory damages in an amount of $200,000.00, exclusive of interest, costs, and attorney's fees.

## *Factual Background*

5. On June 6, 2022, Plaintiff Saroor (Lender) loaned the amount of $200,000.00 to Defendant Patel (Borrower) pursuant to a written Promissory Note dated June 6, 2022 ("Note"). A copy of the Note is attached hereto as **Exhibit 1**.

6. The annual interest rate in the Note is 12%.

7. The Note did not contain an explicit maturity date, and thus, was a demand Note.

8. During the first 12 months after signing the Note, beginning on July 1, 2022, Patel made a $2000 interest payment each month to Saroor, which was the exact amount of the 12% interest that accrued each month.

9. On or about July 15, 2023, Saroor made demand on Patel to repay the Note in full within 14 days.

10. Patel failed to honor the demand and pay the Note in full, and in any further amount.

11. Patel's failure to pay the amount due and owing on the Note constitutes a Payment Default pursuant to the Note. (See **Exh. 1**, p. 1 – 2, "Payment Default")

12. After Saroor made the demand on Patel, Patel made no further payments whatsoever on the Note toward either prinicipal or accrued interest.

13. Over the course of the next 18 months, Patel continuously and repeatedly failed to pay any amount of principal or accrued interest due on the Note despite repeated requests by Plaintiff Saroor to do so.

14. Since July, 2023, Defendant Patel stated to Bharat Patel, a Manager of Plaintiff, on several occasions that Defendant Patel did not have the money to pay the Note.

15. Because of Patel's statements of not having money to pay the Note, Plaintiff believes the prospect of payment or Patel's performance of the Note is impaired, and thus constitutes an "Adverse Change" under the terms of default. (See **Exh. 1**, p. 2, "Adverse Change")

16. The existence of an "Adverse Change" constitutes a Payment Default pursuant to the terms of the Note. (See **Exh. 1**, p. 1 – 2, "Payment Default")

17. Defendant Patel has breached the Note by failing to pay the full amount of principal, accrued interest, and late charges due on the Note and defaulting under the Note.

18. Plaintiff Saroor has fully performed its obligations required by the Note.

19. Defendant Patel was given credits for the twelve $2,000.00 payments for accrued interest made in 2022 and 2023. The payments wereapplied to the 12% accrued interest each month and none to principal in light of the exact amount of accrued 12% interest paid by Defendant Patel each month.

20. As of April 14, 2025, Plaintiff has suffered total monetary damages of $242,933.33, comprised of a) the amount of $200,000.00 in principal due under the Note, and b) 12% simple accrued interest between July 1, 2023 and April 14, 2025 in the amount of $42,933.33.

21. The 12% interest continues to accrue at a rate of $66.66 per day.

22. The Note provides for payment by Borrower of Lender's reasonable attorney's fees, stating in pertinent part as follows:

> **"ATTORNEY'S FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorney's fees. Borrower also will pay Lender all other amounts Lender actually incurs as Court costs…". (**Exh. 1**, p. 2)

23. Plaintiff is entitled to an award of its reasonable attorney's fees, costs and expenses incurred in the collection of the total amount due under the Note.

3

WHEREFORE, Plaintiff, Saroor, LLC, an Illinois limited liability company, requests that the Court enter judgment in its favor and against Defendant, Dharmendra R. Patel, an individual, in the amount of $200,000.00, plus all accrued interest since July 1, 2023 until the date of the entry of judgment, plus an award of reasonable attorney's fees, court costs pursuant to the Note, and any further relief the Court deems just.

        Plaintiff, Saroor, LLC, an Illinois
        limited liability company,

        /s/    Jack L. Haan

Jack L. Haan – Att'y No. - 6210936
Law Office of Jack L. Haan, P.C.
11950 S. Harlem Ave., Suite 202-2
Palos Heights, IL 60463
(708) 480-2600
jackhaan@haanlawoffice.com

# PROMISSORY NOTE

| | | | |
|---|---|---|---|
| Borrower: | Dharmendra R Patel | Lender: | Saroor LLC |
| | 130 Savina Dr | | 12801 S Cicero Dr |
| | Brunswick GA | | Alsip IL 60803 |

**Principal Amount: $200,000.00**     **Date of Note: June 06, 2022**

**PROMISE TO PAY.** Dharmendra R Patel ("Borrower") promises to pay to Saroor LLC ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00), together with interest on the unpaid principal balance from July 1, 2022, calculated using an interest rate of 12.00% per annum, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in any Index for this loan, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the Interest rates described in this paragraph: 6 monthly interest payments of $2000 each month, beginning July 1, 2022, with interest calculated on the unpaid principal balances using an interest rate of 12.00%. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rates stated in this Note.

**PREPAYMENT PREMIUM.** If Borrower prepays all or any part of the principal balance of this Note, then Borrower shall pay to Lender a prepayment premium ("Premium") equal to the Prepaid Principal multiplied by the Premium Percentage. The term "Premium Percentage" shall mean three percent (3%) beginning on the date of this Note and ending on (and including) the first anniversary date of this Note; and zero percent (0%) beginning on the day after the second anniversary date of this Note and thereafter. The term "Prepaid Principal" shall mean the principal being prepaid on the Prepayment Date. The term "Prepayment Date" shall mean the date the prepayment is tendered. Notwithstanding anything herein to the contrary, a Premium shall not be due on any partial prepayment until the total of all partial prepayments paid during the calendar year (in which the partial prepayment is being tendered) has exceeded the following: 25% of the outstanding principal amount of this Note; provided, however, that no Premium shall be charged unless the Premium related to any partial prepayment exceeds $25.00. All partial prepayments shall be applied in such order and manner as Lender may from time to time determine in its sole discretion. A Premium shall be due whether a prepayment is made voluntarily or, where allowed by applicable law, made involuntarily as a result of the acceleration of maturity upon a default or otherwise. Failure by Lender to collect or demand a Premium at the time of prepayment shall not be deemed a waiver of Lender's right to such Premium or to any future premium. Subject to the foregoing, Borrower may prepay this Note in part or in full at any time before final maturity, whether by cash, a new loan, renewal, or otherwise. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations, or as full satisfaction of a disputed amount must be mailed or delivered to: Business Loan Servicing Disputed Accounts Department, 5 West Monroe Street, 5th Floor Chicago IL 60661

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $150.00, whichever is greater up to the maximum amount of Three Hundred Fifty Dollars ($350.00) per late charge.

**INTEREST AFTER DEFAULT.** Upon the occurrence of any Event of Default, including, but not limited to, (i) any material adverse change in the business assets, affairs, prospects or financial condition of Borrower or any guarantor, (ii) failing to provide financial statements, copies of Federal tax returns and other information relating to the financial condition, properties and affairs of the Borrower, any guarantor or grantor, as provided for in this Note and/or any Related Document, or (iii) failure to pay upon final maturity, Lender may, at Lender's option and if permitted by applicable law, a) add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note, including any increased rate, and/or b), increase the interest rate on this Note by 3.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate allowed under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Payment Default.** Borrower fails to make any payment when due under this Note.

EXHIBIT 1

## PROMISSORY NOTE
### (Continued)

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Transfer of Assets.** Borrower leases, sells, or otherwise conveys, or agrees to lease, sell, or otherwise convey, a material part of its assets or business outside of the ordinary course of business.

**Defaults with Respect to Third Parties.** Borrower fails to make any payment when due or fails to comply with or to perform any term, obligation, covenant, or condition contained in any agreement between any other person and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Judgments or Decrees.** One or more judgments or decrees shall be entered against the Borrower and such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure, replevin, repossession, attachment, levy, execution, or forfeiture proceedings, whether by judicial proceeding, self-help, or any other method, by any creditor of Borrower, or by any governmental agency against the Collateral or any other assets of Borrower. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Failure to Comply with Laws.** Borrower fails to comply with all applicable statutes, laws, ordinances and governmental rules, regulations and orders to which it is subject or which are applicable to its business, property and assets.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding Events of Default occurs with respect to any guarantor of the Indebtedness as if the word "guarantor" were substituted for the word "Borrower" in such Event of Default, or any guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty.

**Events Affecting Granter.** Any of the preceding Events of Default occurs with respect to any grantor, pledger or obligor of the Indebtedness as if "grantor", "pledger" or "obligor" were substituted for the word "Borrower" in such Event of Default, or any grantor, pledger, or obligor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Related Document or agreement.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any Event of Default, Lender may declare the entire unpaid principal balance on this Note and the Indebtedness and all accrued unpaid interest immediately due, without notice (except that in the case of any Event of Default of the type described in the DEFAULT - Insolvency section herein, such acceleration shall be automatic and not at Lender's option), and then Borrower will pay that amount. Additionally, upon the occurrence of any Event of Default and until the entire unpaid principal balance on this Note and the Indebtedness is paid in full, without notice or demand and without waiving any other right or remedy, Lender may, at Lender's option, elect to impose increases in the interest rate pursuant to and as set forth in the section of this Note captioned "INTEREST AFTER DEFAULT" and, if included in this Note, the section captioned "PERFORMANCE BASED RATE CHANGES. Borrower shall be liable for any deficiency remaining after disposition of any collateral which Lender may choose to realize upon.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees. Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any

EXHIBIT 1

# PROMISSORY NOTE
## (Continued)

motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**DISHONORED CHECK CHARGE.** Borrower will pay a processing fee of $50.00 if any check given by Borrower to Lender as a payment on this loan is dishonored.

**RIGHT OF SETOFF.** Borrower grants to Lender a security interest in, as well as a right of setoff against, and hereby assigns, conveys, delivers, pledges and transfers to Lender, as security for repayment of the Indebtedness, all Borrower's right, title and interest in and to all Borrower's accounts with Lender or any subsidiary or affiliate of SSK Capital Fund, LLC (each hereinafter referred to as a "Lender Affiliate") and all other obligations at any time owing by Lender or any Lender Affiliate to Borrower. This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, without prior notice to Borrower and irrespective of (i) whether or not Lender has made any demand under this Note or the Related Documents or (ii) whether such Indebtedness is contingent, matured or unmatured, to the extent permitted by law, to collect, charge and/or setoff all sums owing on the Indebtedness against any and all such accounts and other obligations, and, at Lender's option, to administratively freeze or direct a Lender Affiliate to administratively freeze all such accounts and other obligations to allow Lender to protect Lender's security interest, collection, charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by security interest in and lien upon all collateral described in any Related Document.

**OVERPAYMENTS.** No refund of any overpayment made by Borrower with the final payment on this Note will be required if the overpayment is less than $1.00.

**FINANCIAL STATEMENTS.** Borrower shall furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**ENFORCEABILITY AND ORGANIZATION.** Borrower is duly authorized to transact business in all states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Borrower's execution, delivery and performance of this Note and all the Related Documents have been duly authorized by all necessary action by Borrower. This Note and all the Related Documents constitute legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms. If applicable, Borrower is an entity which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the state of its organization.

**INFORMATION WAIVER.** Lender may provide, without any limitation whatsoever, to any one or more purchasers, potential purchasers, or affiliates of SSK Capital Fund, LLC., any information or knowledge Lender may have about the undersigned or about any matter relating to this document and the Related Documents, and the undersigned hereby waives any right to privacy the undersigned may have with respect to such matters.

**INDEBTEDNESS.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents, together with interest on such amounts as provided in this Note, and all obligations, debts and liabilities, plus interest thereon, of Borrower or any one or more of them to Lender, as well as all claims by Lender against Borrower or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of this Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated and whether Borrower may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter become otherwise unenforceable; and further includes, without limitation, all principal, interest, and other amounts, costs and expenses payable under the Related Documents, whether executed by the Borrower or by any other person or entity, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Related Documents, together with interest thereon as provided in the Related Documents.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now existing or hereafter arising, executed in connection with the Indebtedness.

**LIABILITIES FOR OBLIGATIONS UNDER RELATED DOCUMENTS.** Borrower also promises to pay to Lender all of the Indebtedness. Borrower acknowledges that some of the Related Documents, pursuant to which Indebtedness may arise, may be executed only by persons or entities other than the Borrower.

EXHIBIT 1

## PROMISSORY NOTE
### (Continued)

**PURPOSE.** Borrower agrees that no advances under this Note shall be used for personal, family or household purposes and that all advances hereunder shall be used solely for business, commercial, or other similar purposes.

**JURY WAIVER.** THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER WHETHER ANY SUCH RIGHT NOW OR HEREAFTER EXISTS. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S. or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to Illinois Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**COUNTERPARTS.** This document may be executed in any number of counterparts and by different parties on separate counterparts, each of which when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same agreement.

**GOVERNING LAW.** The Lender's loan production office for this transaction is located at the address and in the State (the "LPO State") indicated in the LPO address or the loan production office address on the first page of this document. This document will be governed by and interpreted in accordance with federal law and the laws of the LPO State, except for matters related to interest and the exportation of interest, which matters shall be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations and opinions) and the laws of the State of Illinois. However, if there is ever a question about whether any provision of this document is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction which is evidenced by this document has been made in the State of Illinois.

**VENUE.** If there is a lawsuit, the undersigned agrees to submit to the jurisdiction of the courts of the county in the LPO State in which the Lender's loan production office is located.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Illinois (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Note until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling. If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. It is agreed that any payment which would otherwise for any reason be deemed unlawful interest under applicable law shall be deemed to have been applied to the unpaid principal balance of this Note, or to other indebtedness. The unpaid balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer

**EXHIBIT 1**

## PROMISSORY NOTE
(Continued)

print-outs. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Note, and notice of acceleration of the maturity of this Note. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. Unless specifically permitted otherwise by the terms and conditions of this Note, no alteration of or amendment to this Note shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment. Borrower agrees and consents to Lender's sale or transfer, whether now or later, of this Note, or the Related Documents or of any participation interest in this Note or Related Documents to one or more purchasers, whether related or unrelated to Lender. Borrower waives any and all notices of sale of this Note, the Related Documents or of any participation interests, as well as any notices of any repurchases of this Note, the Related Documents, or of any participation interests. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

Dharmendra R Patel

By: _____

LENDER:

Saroor LLC

By: _____
Manager of Saroor LLC

Signed before me this 6th day of June, 2022 by Dharmendra R. Patel, who is personally known to me.

Brandy Whittaker
Notary Public
State of Georgia

[Notary Seal: BRANDY WHITTAKER, NOTARY PUBLIC, GEORGIA, BRANTLEY, EXPIRES JUNE 13, 2025]

Page 5 of 5

EXHIBIT 1